IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

MICHAEL K. FISHER,

    Plaintiff,

        v.                                    CIVIL NO.: WDQ-11-1038

DORIS R. FISHER,

    Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

    Michael K. Fisher, *pro se*, sued Doris R. Fisher for breach
of contract and other claims.  For the following reasons, the
Court will deny Michael Fisher's motion for partial summary
judgment.

I. Background[1]

    Michael Fisher is the only child of the late Robert K.
Fisher, a U.S. citizen, and the late Johanna M. Fisher, a German
citizen.  Michael Fisher Aff. ¶¶ 2, 4; Compl. ¶ 1.

    Michael Fisher asserts that, in April 1993, his mother was
dying of breast cancer, and his parents "determined to order
their affairs . . . to ensure that ownership of their . . .
assets . . . after their deaths [would] be vested in their

_____

[1] For Michael Fisher's motion for partial summary judgment, Doris
Fisher's evidence "is to be believed, and all justifiable
inferences are to be drawn in [her] favor."  *Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 255 (1986).

descendants." Michael Fisher Aff. ¶ 3; Compl. ¶ 12.  He further

asserts that he and his parents entered into an oral agreement

(the "Ancillary Agreement")[2] whereby he waived his testamentary

rights under German law in exchange for each parent's promise (1)

to execute mutual and reciprocal wills naming the other parent as

the primary beneficiary and Michael Fisher as the secondary

beneficiary of his or her estate, and (2) to never revoke these

wills, or convey their assets to any third party during their

lives without his consent.  Michael Fisher Aff. ¶¶ 4-5; Compl. ¶

13.

Michael Fisher asserts that his parents also entered into an

oral agreement (the "Agreement")[3] whereby Johanna Fisher agreed

to forego application of German probate law and execute a will

under Maryland law naming her husband as the primary beneficiary,

in exchange for Robert Fisher's promise to (1) execute a

reciprocal and mutual will, (2) "leave his entire estate to their

son," and (3) never revoke the will or convey assets to third

---

[2] Although Michael Fisher refers to this as the "Ancillary Contract," see Compl. 11-12, 30, Doris Fisher disputes its existence, see ECF No. 34 at 5-9. "An understanding or agreement is not necessarily an enforceable contract." *Alemanji v. Tengen*, Case No. AW-09-0500, 2012 WL 718846, at *6 (D. Md. Mar. 5, 2012) (*citing* Restatement (Second) of Contracts § 3 (1981)). *See also* Black's Law Dictionary (9th ed. 2009) (A contract is "[a]n agreement between two or more parties creating obligations that are enforceable or otherwise recognizable at law.").

[3] Although Michael Fisher refers to this as "The Contract," see Compl. 12-15, 28-30, the Court will refer to it as the Agreement for the reasons stated *supra* in note 2.

parties during his life without Michael Fisher's consent.   Compl.
¶ 15.

On April 7, 1993, Robert and Doris Fisher executed wills
(the "1993 Wills") naming the other as the primary beneficiary --
and Michael Fisher the secondary beneficiary -- of their estates.
Compl., Ex. 1, 2.   Lynessa M. Best, the Fishers' neighbor, and
John J. Klocko III, Robert Fisher's attorney, were witnesses.
*Id.*   Best swears that Johanna and Robert Fisher told her before
signing the 1993 Wills that they did so in accordance with the
Agreement.[4]   The 1993 Wills do not mention the Agreement or the
Ancillary Agreement.   Johanna Fisher died on April 15, 1994.
Compl. ¶ 5.

Three years later, Robert Fisher planned to remarry.   *See*
Compl., Ex. 11 at 1.   On April 28, 1997, he and Doris Fisher[5]
executed a prenuptial agreement (the "First Prenuptial
Agreement"), which contained these provisions:

- "[E]ach party shall keep and retain sole ownership and
  control of all property, real or personal, now owned or
  hereafter acquired by such party."   Compl., Ex. 11 ¶ 3.

- "Any assets obtained by either party as a consequence of the
  use, investment, reinvestment or any transfer of any portion

---

[4] Lynessa M. Best Aff., Compl. Ex. 3 ¶¶ 3, 6.   Klocko is dead.
Compl. ¶ 20.

[5] Née Doris R. Smith.   *See* Compl., Ex. 11 at 1.

of their separate estate . . . shall remain part of such
separate estate." *Id.* ¶ 5.

- Each party "is presumed . . . to be the sole owner of any
property he or she owned prior to the marriage," and "joint
use of such property does not give rise to joint ownership,
unless the parties agree otherwise." *Id.* ¶ 8.

- "[E]ither party shall have the right to transfer or convey
to the other any property or interest therein which may be
lawfully conveyed or transferred during his or her lifetime
or by Will." *Id.* ¶ 4.

- "Notwithstanding the provisions . . . that allow the parties
to maintain their separate income and assets," any
"commingling or pooling of assets [is] not to be interpreted
to imply any abandonment of the terms and provisions of the
[First Prenuptial Agreement][.]" *Id.* ¶ 7.

Klocko prepared and notarized the agreement. *Id.* at 5; Compl. ¶
23.

When they married on July 25, 1997, Doris and Robert Fisher
executed a second prenuptial agreement (the "Second Prenuptial
Agreement") which included nearly identical provisions. *See*
Doris Fisher Decl., Attach. B.

On September 1, 2005, Robert Fisher executed a will (the
"2005 Will") that "revoke[ed] all prior wills and codicils," and
directed that his residuary estate be left to the Robert K.

Fisher Revocable Trust (the "Trust"). Doris Fisher Decl.,

Attach. A at 1, 5. The Trust declaration directed that, upon

Robert Fisher's death, the principal and any income be given to

Doris Fisher. Trust Decl., Compl., Ex. 14 at 13-14. It further

provided that Michael Fisher would be given $1,000 and "the

knowledge that he [had been] given every opportunity and

advantage to achieve, and succeed at, whatever honorable

profession or vocation he [had] cho[sen] and that [Robert Fisher]

wishe[d] him the best." *Id.* at 11. Robert Fisher died on

January 11, 2010. Doris Fisher Decl. ¶ 1.

On April 19, 2011, Michael Fisher filed this 19-count

complaint alleging breach of contract, unjust enrichment,

tortious interference, undue influence, fraud, and conversion.[6]

On August 31, 2011, he moved for summary judgment on four counts.

ECF No. 28. On September 19, 2011, Doris Fisher opposed the

motion.[7] On September 29, 2011, Michael Fisher filed a reply.

ECF No. 37.

_____

[6] The Court has diversity jurisdiction because Michael Fisher is
a Georgia citizen, Doris Fisher is a Maryland citizen, and the
amount in controversy exceeds $75,000. *See* Compl. ¶¶ 3-5; 28
U.S.C. § 1332.

[7] ECF No. 34. The opposition was filed late. Under Local Rule
105.2, an opposition must be filed within 14 days after service
of the motion. When service is by mail, Fed. R. Civ. P. 6(d)
adds three additional days to the response time. Michael Fisher
served his motion by mail on Monday, August 29, 2011. *See* ECF
No. 28 at 2. Thus, Doris Fisher had until Thursday, September 15
-- 17 days later -- to file her opposition. *See* Local Rule 105.2

II. Analysis

A. Standard of Review

Under Fed. R. Civ. P. 56(a), summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant," and draw all reasonable inferences in her favor, *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court also "must abide by the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

---

(D. Md. 2011); Fed. R. Civ. P. 6(d). She did not file until the following Monday, September 19, 2011.

Generally, "a district court must refuse summary judgment wh[en] the nonmoving party has not had the opportunity to discover information that is essential to [her] opposition." *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008) (internal quotation marks and citation omitted).  In such a case, the nonmoving party must comply with Fed. R. Civ. P. 56(d) and "set out the reasons for discovery in an affidavit."  *Id.*  "The purpose of the affidavit is to ensure that the nonmoving party is invoking the protections of Rule 56[d] in good faith and to afford the trial court the showing necessary to assess the merits of a party's opposition."  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F. 3d 214, 244 (4th Cir. 2002) (quotation marks omitted).

"[S]ufficient time for discovery is considered especially important when the relevant facts are exclusively in the control of the opposing party."  *Harrods*, 302 F. 3d at 246-47 (quotation marks omitted).

B. Michael Fisher's Motion for Partial Summary Judgment

Michael Fisher has moved for summary judgment on Counts I, II, III, and XVIII.[8]

---

[8] The Court will decline Michael Fisher's invitation to treat his motion as unopposed.  *See* ECF No. 37 at 1-3.  Although Doris Fisher filed her opposition late, *see supra* note 7, Michael Fisher has alleged no prejudice.  *See H & W Fresh Seafoods, Inc. v. Schulman*, 200 F.R.D. 248, 252 (D. Md. 2000) (denying a motion

1. Count I (the Agreement)[9]

In Count I, Michael Fisher seeks specific performance of the Agreement.  Compl. ¶¶ 55-59.  He argues that he is entitled to summary judgment because Doris Fisher has not disputed that Best is the only surviving witness to his parents' execution of the 1993 Wills, or identified anyone "likely to have personal knowledge" about the Agreement.  ECF No. 28-1 at 3-4, 7.  Thus, he argues that Doris Fisher cannot dispute the Agreement's existence and enforceability.  ECF No. 28-1 at 3-4, 7.

Doris Fisher counters that the Agreement does not satisfy the requirements for testamentary dispositions, enforcement is barred by the Statute of Frauds and the statute of limitations, and there are disputed material facts about the Agreement's existence.  ECF No. 34 at 5-7.

The Court need not now determine the enforceability of the Agreement, because there is a genuine dispute about its existence.  Although Michael Fisher and Best have sworn that the Agreement exists, "it is impossible to weigh the credibility of witnesses based on their affidavits," and the Court "at summary judgment [does] not have . . . the benefit of cross examination to evaluate biases and to establish the ability of witnesses to

---

to strike an untimely opposition because "the defendant ha[d] not shown that he was harmed in any way by the seven-day delay").

[9] The complaint captions Count I as "The Contract."  Compl. 28.

8

observe what occurred."[10]   Further, "witness testimony that the
jury is not required to believe cannot be used to sustain a
summary judgment decision."[11]

From other evidence in the record, a jury could reasonably
conclude that the Agreement did not exist.  No writing
memorializes its terms, and neither 1993 Will refers to the
Agreement.  Klocko, the attorney who witnessed the 1993 Wills
with Best, also drafted and notarized the First Prenuptial
Agreement, which allowed Robert Fisher to transfer his assets to
Doris Fisher.  See Compl., Ex. 11 at ¶ 4.  A jury could
reasonably infer that Klocko would not have included this
provision had Robert and Johanna Fisher said -- before signing
the 1993 Wills -- that they intended to share their assets only
with Michael Fisher.  Accordingly, the Court will deny summary
judgment on Count I.[12]

_____

[10] *Moore v. Morton*, 958 F.2d 368 (table), 1992 WL 46292, at *4
n.3 (4th Cir. 1992).

[11] *Luh v. J.M. Huber Corp.*, 211 F. App'x 143, 146 (4th Cir. 2006)
(*citing Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133,
151 (2000)).

[12] Because the Court found this genuine dispute of material fact,
it need not address Doris Fisher's request for time to conduct
discovery.  *See*  ECF No. 34 at 10.  The Court notes, however,
that Doris Fisher has failed to provide an affidavit that meets
the requirements of Rule 56(d).

2. Count II (The Ancillary Agreement)[13]

In Count II, Michael Fisher seeks specific performance of the Ancillary Agreement.  Compl. ¶¶ 60-64.  He argues that he is entitled to summary judgment because no witness can dispute that he and his parents entered the Ancillary Agreement, he waived his testamentary rights under German law, and his parents executed the 1993 Wills.  ECF No. 28-1 at 7-12.  Doris Fisher opposes summary judgment on the same grounds on which she opposed judgment on Count I.  ECF No. 34 at 8.

The parties dispute the existence of the Ancillary Agreement.  Summary judgment cannot rest solely on Michael Fisher and Best's affidavits, because a jury would not be required to believe their testimony at trial.  *See Moore*, 1992 WL 46292, at *4 n.3; *Luh*, 211 F. App'x at 146.  Further, the Ancillary Agreement's existence is not proven simply because Michael Fisher's parents executed the 1993 Wills, and he did not pursue his testamentary rights under German law.  *See* ECF No. 28-1 at 9-10.  A jury could reasonably infer that the Fishers acted in the absence of an agreement, particularly because no writing memorializes the Ancillary Agreement, and the 1993 Wills do not

---

[13] The complaint captions Count II as "The Ancillary Contract." Compl. 30.

mention it.[14]   Accordingly, the Court will deny summary judgment
on Count II.

     3. Count III (the First Prenuptial Agreement)[15]

     In Count III, Michael Fisher asks the Court to direct Doris
Fisher "to abide by the terms of the [First Prenuptial Agreement]
by providing . . . all of [Robert Fisher's] joint and separate
asset records as of [the date of his marriage to Doris Fisher]
and by separating all assets jointly held" since then.  Compl. ¶¶
65-70.  He argues that he is entitled to summary judgment because
there is "no genuine dispute" that the First Prenuptial Agreement
required Doris Fisher and Robert Fisher to separate their assets.
ECF No. 28-1 at 14-15.

     Doris Fisher counters that Michael Fisher "misconstrues" the
First Prenuptial Agreement, which gave Robert and Doris Fisher
"the unfettered right to convey and transfer their respective
assets to the other."  ECF No. 34 at 8-9.  She also contends that
Michael Fisher has not shown that he is entitled to a mandatory
injunction.  Id. at 9.

---

[14] See Dennis, 290 F.3d at 645 (on a motion for summary judgment,
the Court must draw all reasonable inferences in the nonmovant's
favor).

[15] The complaint captions Count III as "The Ante-Nuptial
Agreement" but describes the First Prenuptial Agreement.  Compl.
32-33.

Under Maryland law,[16] the Court must construe the First

Prenuptial Agreement "by looking at the whole,"[17] and giving

effect to the agreement's plain and unambiguous language.[18]

Although the First Prenuptial Agreement allowed Doris and Robert

Fisher to keep their assets separate, it did not require that.[19]

The agreement provided that the Fishers could "transfer or convey

to the other any property or interest therein" and jointly own

property.  *See* Compl., Ex. 11 ¶¶ 4, 8.   Because it did not

require the separation of assets, the Court will deny Michael

Fisher summary judgment on Count III.[20]

_____

[16] Because this is a diversity jurisdiction case, the Court "must
apply the substantive law of the forum state."  *Colgan Air, Inc.
v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007).

[17] *Ramlall v. MobilePro Corp.*, 30 A.3d 1003, 1016 (Md. Ct. Spec.
App. 2011).

[18] *See Hovnanian Land Inv. Grp., LLC v. Annapolis Towne Centre at
Parole, LLC*, 25 A.3d 967, 983 (Md. 2011) (internal citation
omitted).

[19] *See* Compl., Ex. 11 ¶ 7 ("[n]otwithstanding the provisions . .
. that *allow* the parties to maintain their separate income and
assets . . .") (emphasis added).

[20] Had the agreement required Doris and Robert Fisher to separate
their assets, Michael Fisher has not shown that he would be
entitled to the relief he seeks.  By requesting an order that
Doris Fisher "perform an affirmative act," Michael Fisher seeks a
mandatory injunction.  *See Kartman v. State Farm Mut. Auto. Ins.
Co.*, 634 F.3d 883, 892 (7th Cir. 2011).  A plaintiff seeking an
injunction must show that (1) he "has suffered an irreparable
injury," (2) remedies "available at law, such as monetary
damages, are inadequate to compensate for that injury," (3) "the
balance of hardships" between the parties warrants an injunction,
and (4) "the public interest would not be disserved" by an

4. Count XVIII ("Recovery of Trust Assets")

Count XVIII asserts that the Agreement and Ancillary Agreement entitle Michael Fisher to "the property contained in the Trust," and the Court should order Doris Fisher to account for and convey to him "all assets held or formerly held in the Trust." Compl. ¶ 135. Michael Fisher argues that he is entitled to summary judgment on this claim because there is "no genuine dispute as to any material fact in this instance." ECF No. 28-1 at 15.

Doris Fisher counters that summary judgment is improper because she disputes the "very existence" of the Agreement and the Ancillary Agreement, and Michael Fisher has not shown that he is entitled to injunctive relief. ECF No. 34 at 9-10.

Because there is a genuine dispute about the existence of the Agreement and Ancillary Agreement, *see supra* Parts II.B.1 & 2, the Court will deny summary judgment on Count XVIII.

III. Conclusion

For the reasons stated above, the Court will deny Michael Fisher's motion for partial summary judgment.

_4/18/12_
Date

_____
William D. Quarles, Jr.
United States District Judge

---

injunction. *Legend Night Club v. Miller*, 637 F.3d 291, 297 (4th Cir. 2011). Michael Fisher has not made this showing.