**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Northern Division*

|  |  |  |
|---|---|---|
| MICHAEL K. FISHER, | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No.: WDQ-11-1038 |
| DORIS R. FISHER, | * | |
| Defendant. | * | |
|  | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

This Memorandum Opinion and its accompanying Order address Plaintiff Michael K. Fisher's Second Motion to Compel Defendant's Discovery Responses, ECF No. 44; Defendant Doris R. Fisher's Response and Opposition to Plaintiff's Second Motion to Compel, ECF No. 48; and Plaintiff's Reply, ECF No. 49. It also addresses Defendant's supplemental briefing, which was directed by my April 19, 2012 Letter Order, ECF No. 54, submitted to me by email on May 3, 2012, and is attached as Exhibit A ("Defendant's Spreadsheet"); and Plaintiff's supplemental briefing in response, which was requested by Plaintiff's May 3, 2012 email, permitted by my May 8, 2012 Paperless Order, ECF No. 57, submitted by email on May 10, 2012, and is attached as Exhibit B ("Plaintiff's Surreply"). For the reasons stated herein, Plaintiff's Motion to Compel is GRANTED IN PART and DENIED IN PART. This Memorandum Opinion and its accompanying Order dispose of ECF Nos. 44, 48, and 49.

## I. BACKGROUND

The parties have provided the Court with no specific cost estimates about what has been spent, thus far, during discovery in this case. However, since August 2011, the parties have reported a number of discovery disputes, resulting in multiple motions and numerous Court orders.[1] While a complete inventory of the discovery performed to date cannot be reconstructed

---

[1] On August 16, 2011, Judge Quarles referred the above-entitled case to me to resolve discovery disputes and related scheduling matters pursuant to 28 U.S.C. § 636 and Local Rules 301 and 302. ECF No. 25. At that time, four motions were pending my review: Plaintiff's Motion to Modify Scheduling Order, ECF No. 16; Plaintiff's Motion to Strike Certain of the Defendant's Defenses, ECF No. 18; Plaintiff's Motion to Seal Medical Exhibits, ECF No. 22; and Plaintiff's [First] Motion to Compel Discovery Responses, ECF No. 24. I scheduled an in-court hearing and status conference to discuss and resolve these disputes. Aug. 24, 2011 Ltr. Order 1, ECF No. 26. In the September 13, 2011 hearing, I granted Plaintiff's Motion to Modify Scheduling Order; denied Plaintiff's Motion to Strike, without prejudice; granted Plaintiff's Motion to Seal; and denied Plaintiff's Motion to Compel as moot with respect to Plaintiff's first set of interrogatories, and without prejudice as to Plaintiff's first request for production of documents. Civil Mins. Hr'gs, ECF No. 31; Sept. 14, 2011 Ltr. Order 1–2, ECF No. 33 (memorializing the September 13, 2011 hearing). I also directed the parties to confer regarding a discovery plan and to submit their proposed plan to the Court. Sept. 14, 2011 Ltr. Order 2.

In addition to the filings made with the Court, defense counsel and Mr. Fisher exchanged a number of letters and emails, on which chambers was copied. In a September 26, 2011 letter, Plaintiff expressed concerns that Defendant had destroyed documents relevant to the litigation. *See* Pl.'s Sept. 26, 2011 Ltr., ECF No. 39-1. Defense counsel responded that he had no personal knowledge and knew of no evidence regarding the alleged destruction of documents. *See* Def. Counsel's Sept. 29, 2011 Ltr., ECF No. 39-2. In an October 13, 2011 Letter Order, I reminded defense counsel of the need to ensure that his client is aware of the duty to preserve documents and directed the parties to confer regarding the preservation of evidence in advance of a pre-scheduled October 17, 2011 telephone status call. *See* Oct. 13, 2011 Ltr. Order 1–2, ECF No. 39. Other concerns regarding discovery were to be raised at that time. *Id.* at 2.

In an October 25, 2011 Letter Order, I memorialized my discussions with Plaintiff and defense counsel in the re-scheduled telephone status conference call. *See* Oct. 25, 2011 Ltr. Order 1, ECF No. 40. In that Order, I directed the parties to confer regarding all documents that Plaintiff maintained he had yet to receive from Defendant. *See id.* ¶¶ 1–2. I further directed the parties that they should attempt to resolve any remaining discovery disputes without Court intervention. *Id.* ¶ 3. If, however, dispute remained, the parties were directed to exchange, and then submit to the Court, a spreadsheet detailing their specific concerns. *See id.* ¶ 4.

In a November 29, 2011 Letter Order, I granted defense counsel's request for an extension of time to reply to Plaintiff's discovery requests. Nov. 29, 2011 Ltr. Order 1–2, ECF No. 41; *see also* Def. Counsel's Nov. 28, 2011 Ltr., ECF No. 41-1; Pl.'s Nov. 28, 2011 E-Mail, ECF No. 41-2. I ordered Defendant to provide "complete, responsive, and non-evasive"

from the filings,[2] it appears that a considerable amount of time and resources have been spent on discovery.[3] Put simply, the parties appear to have become lost in a spiral of conflict that has

---

discovery to Plaintiff by January 10, 2012. Nov. 29, 2011 Ltr. Order 1 (citing Fed. R. Civ. P. 37(a)(4)). I also stated that the deadline for Defendant's responses would not be further extended, and noted that "a failure to comply with [my] Order may subject Defendant to case-dispositive sanctions under Fed. R. Civ. P. 37(b), if warranted." *Id.* at 2.

On February 1, 2012, I issued a Paperless Order directing the parties to provide a brief status report on the progress and current status of discovery. ECF No. 43. In their responses, the parties elaborated on their ongoing discovery disputes, which revolve primarily around Plaintiff's concerns that Defendant's document production was incomplete or insufficient. *See* Pl.'s Status Report, ECF No. 45; Def. Counsel's Feb. 7, 2012 Ltr., ECF No. 46-1; Pl.'s Feb. 9, 2012 Ltr., ECF No. 46-2; Def. Counsel's Feb. 13, 2012 Ltr., ECF No. 46-3. Additionally, on February 13, 2012, Plaintiff filed his Second Motion to Compel Discovery Responses. In a February 21, 2012 Letter Order, I noted that Plaintiff's motion to compel "formally addresses many of the concerns raised in [the parties'] earlier correspondence." Feb. 21, 2012 Ltr. Order 1, ECF No. 46. As a result, I directed the parties to complete briefing of the motion, and stated that, "because the essence of the parties' recent discovery dispute is articulated in [Plaintiff's] Motion to Compel, there should be no further reason for correspondence between [Plaintiff], [defense counsel], or the Court with regard to discovery in this case—excluding, of course, the parties' briefing of the motion to compel—until I have made my ruling." *Id.* at 1–2.

Defendant submitted her response to Plaintiff's motion on March 7, 2012. ECF No. 48. Plaintiff replied on March 14, 2012. ECF No. 49. In addition, on March 28, 2012, Plaintiff filed a Motion for Leave to File a Motion for the Imposition of Federal Rule of Civil Procedure 37(b) Sanctions Upon Defendant. ECF No. 52. In a March 30, 2012 Letter Order, I denied Plaintiff's motion without prejudice, finding that it "requested relief that would be inappropriate as a discovery sanction under Fed. R. Civ. P. 37(b)." Mar. 28, 2012 Ltr. Order 2, ECF No. 53. I noted that, if Plaintiff's motion to compel is granted, Plaintiff would be given, at that time, an opportunity to request those sanctions that would be cognizable under Rule 37(b). *Id.*

I note, additionally, that the discovery disputes in this case have impacted the parties' settlement efforts. On September 14, 2011, Judge Quarles referred this case to Judge Gesner for settlement. ECF No. 30. The settlement conference originally scheduled for January 17, 2012, ECF No. 35, was postponed until March 27, 2012, in light of various delays in the discovery process. *See* Nov. 30, 2011 Ltr. Order 1, ECF No. 42. On March 22, 2012, Judge Gesner cancelled the settlement conference, noting that, based upon separate correspondence she received from defense counsel and Plaintiff, "it appear[ed] that it would not be productive to proceed with the settlement conference." Mar. 22, 2012 Ltr. Order, ECF No. 51; *see also* Pl.'s Mem. Supp. Mot. for Leave to File Mot. for Sanctions ¶ 37, ECF No. 52-2 (characterizing the ongoing discovery disputes in this case as "scuttling the settlement process").

[2] This is the case for two reasons. First, a number of more informal discovery disputes have been reported in email submissions and handled by telephone conference calls with the Court and the parties. Second, initial discovery exchanges are not filed with the Court. *See* D. Md. Loc. R. 104.5 ("Unless otherwise ordered by the Court, written discovery requests, responses thereto, notices of service of discovery requests or responses, depositions, and disclosures under Fed. R.

taken on a life of its own, independent of the merits of the case and the amount in controversy. Accordingly, several observations regarding this case must be made, in the hopes of clarifying the issues currently presented by Plaintiff's Motion to Compel.  First, as to the amount in controversy, Plaintiff seeks $806,000 in compensatory damages.  *See* Compl. ¶ 140, ECF No. 1. Second, this case is an example of asymmetrical litigation, where one party (here, Defendant) appears to have the bulk of the discoverable information at issue.  All, or the large majority of, discovery requests appear to have been initiated by Plaintiff.  Indeed, there have been no disputes involving Plaintiff's discovery obligations to Defendant.  Finally, Defendant already has produced a significant number of documents.  *See* Def.'s Resp. ¶ 1 (noting that Defendant "has, in fact, produced 3,358 pages of documents," and that such documents were "produced in four separate tranches"); *see also* Def. Counsel's Feb. 7, 2012 Ltr.; Def. Counsel's Feb. 13, 2012 Ltr.

At its core, Plaintiff's Motion to Compel requests that the Court require Defendant to produce documents related to thirteen asset items,[4] evidence of which Plaintiff discovered upon review of Defendant's January 11, 2011 document production.  Plaintiff states that all items sought are relevant to several specific counts in his complaint, namely, Counts I through VIII, XIII through XIX, and XVII.  Pl.'s Surreply 1; *see also* Compl., Count I ("the contract"); Count II ("the ancillary contract"); Count III ("the ante-nuptial agreement"); Count IV ("breach of the contract"); Count V ("breach of the ancillary contract"); Count VI ("unjust enrichment—the contract"); Count VII ("unjust enrichment—the ancillary contract"); Count VIII ("tortious interference with the contract—actual damages"); Count XIII ("to set aside conveyances of

---

Civ. P. 26(a)(1) and (2) shall not be filed with the Court.  The party propounding written discovery or taking a deposition shall be responsible for retaining the original copies of the discovery materials . . . and shall make them available for inspection by any other party.").
[3] The parties also are embroiled in ongoing state court litigation.  The state court litigation involves independent claims under state law, but many of the same transactions at issue here.
[4] Plaintiff uses the term "asset items" to refer to various financial accounts held by Defendant.

certain financial accounts—undue influence"); Count XIV ("to set aside the trust agreement"); Count XV ("constructive trust on all bank accounts"); Count XVI ("constructive trust on real property"); Count XVII ("fraud"); Count XVIII ("recovery of trust assets"); Count XIX ("conversion). Pursuant to my April 19, 2012 Letter Order, Defendant provided, as to each individual asset item, a short objection to Plaintiff's requests. *See* Def.'s Spreadsheet. Defendant's objections to each individual asset item may be separated into three discrete groups.

The first group contains several disputed asset items—namely, Asset Item 2 (Bank of America Account xx8699), Asset Item 4 (Blue Cross/Blue Shield Account xx6217), Asset Item 5 (Federal Credit Union Account, Redacted Number), Asset Item 7 (SunTrust Account xx6968), and Asset Item 8 (SunTrust Account xx0496)—the relevance of which Defendant disputes. As to each of these items, Defendant argues that the financial account at issue "has no relationship to," or "no relevance to" the decedent's "assets or liabilities" or to "any party's claim or defense and is not reasonably calculated to lead to the discovery of admissible evidence." *See id.* at 1–3.

The second group contains six disputed asset items—namely, Asset Item 6 (NASA Federal Credit Union Account xx16-30), Asset Item 9 (Related to Life Insurance Payment xx0642), Asset Item 10 (USG Account xx3870), Asset Item 11 (Veterans' Administration Government Life Insurance Account xx0642), Asset Item 12 (Bank of America Account xx6311), and Asset Item 13 (SunTrust Account xx3060)—the relevance of which Defendant does not dispute. Rather, as to these items, Defendant argues that "it would be unduly burdensome and expensive for Defendant to seek to obtain these documents" from the third party in whose possession, custody, or control they currently reside. *See, e.g.*, Def.'s Spreadsheet 1.

The third and final group contains two disputed asset items—namely, Asset Item 1 (Bank of America Account xx2199) and Asset Item 3 (Bank of America Account xx8801)—regarding

which Defendant has been informed by the bank holding the account that the account at issue either has been purged or that the bank has no records relating to the account. Following a brief discussion of the governing standards, I address each group of assets items in turn.

## II. DISCUSSION

### A. Document Production Requests

I note, preliminarily, that document production requests are governed by Federal Rules of Civil Procedure 26 and 34. Rule 34 provides that a party may request that the opposing party "produce and permit the requesting party . . . to inspect, copy, test, or sample" relevant documents, electronically stored information, and tangible things that are within the party's "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). "Control," in the Rule 34 context, does not "require a party to have legal ownership or actual physical possession of any [of the] documents at issue." *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 515 (D. Md. 2009) (citation omitted). Rather, "documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action." *Id.* (citation and internal quotation marks omitted); *Steele Software Sys., Corp. v. DataQuick Info. Sys., Inc.*, 237 F.R.D. 561, 563–65 (D. Md. 2006).

The document production request "must describe with reasonable particularity each item or category of items to be inspected" and "must specify a reasonable time, place, and manner for the inspection and for performing the related acts"; it "may specify the form or forms in which electronically stored information is to be produced." Fed. R. Civ. P. 34(b)(1). There is a "'presumption that the producing party should bear the cost of responding to properly initiated discovery requests.'" *Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 575 (D. Md. 2010) (quoting *Thompson v. U.S. Dep't Hous. & Urban Dev.*, 219 F.R.D. 93, 97 (D. Md. 2003)). This rule does

not "preclude the producing party from charging the requesting party a reasonable amount to photocopy the documents that it makes available for . . . review, provided the requesting party has specified in the production request that it seeks production of 'hard copies.'" *Id.*

All document production requests made pursuant to Rule 34 must be within the scope of discovery, as defined in Rule 26(b)(1). Fed. R. Civ. P. 34(a). Parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). For good cause, "the court may order discovery of any matter relevant to the subject matter involved in the action." *Id.* The relevant information "need not be admissible at . . . trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Ordinarily, work product or trial preparation material is not discoverable.[5] Fed. R. Civ. P. 26(B)(3)(A). Additionally, under Rule 26(b)(2)(C), "all permissible discovery must be measured against the yardstick of proportionality." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 523 (D. Md. 2010). Under that rule, the court, acting *sua sponte* or at a party's request, "must limit the frequency or extent of discovery" if: (i) "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; (ii) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"; or (iii) "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in

---

[5] Work product or trial preparation material includes "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). While generally not discoverable, such material may be discovered if it is "otherwise discoverable under Rule 26(b)(1)" and the party seeking the discovery "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(i)–(ii).

controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii).

The party served with a document production request may object to the request if a legitimate basis for doing so exists. *See* Fed. R. Civ. P. 34(b)(2)(C) ("For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons [for the objection]."). For example, a party may object that a document production request exceeds the scope of discovery permitted by Fed. R. Civ. P. 26(b)(1). A party may state that a request should be denied for the grounds stated in Fed. R. Civ. P. 26(b)(2)(C). A party may object to production on the grounds that the requested material is privileged or work product material, *see* Fed. R. Civ. P. 26(b)(3)–(5),[6] or may object to producing the documents without implementation of a protective order, *see* Fed. R. Civ. P. 26(c). All objections to document production requests must be stated with particularity and specificity; objections may not be "boilerplate." *See Hall v . Sullivan*, 231 F.R.D. 468, 470 (D. Md. 2005); *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 199 F.R.D. 168, 173 (D. Md. 2001); *Marens v. Carrabba's Italian Grill, Inc.*, 196 F.R.D. 35, 38–39 (D. Md. 2000).

Pursuant to Rule 37, a party may move for an order compelling production, so long as the moving party indicates that they have "in good faith conferred or attempted to confer with the person or party failing to make . . . discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1), (3)(B); *see also* D. Md. Loc. R. 104.7. An "evasive or incomplete" response is treated as a failure to respond in the motion to compel context. Fed. R. Civ. P. 37(a)(4).

---

[6] If a party objects on attorney-client privilege or work product grounds, the objection must be particularized, *see* Fed. R. Civ. P. 26(b)(5)(A), and it must be accompanied by the information required by this Court's Discovery Guidelines, *see* D. Md. Loc. R., App'x A, Guidelines 7 & 10.d. Failure to do so may result in waiver of the privilege or work product protection. *See generally Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 263–67 (D. Md. 2008).

As described above, the items Plaintiff seeks in his motion to compel are discoverable if they are relevant to the claims and defenses that have been pleaded and if they are within the "possession, custody, or control" of Defendant, subject to the various considerations outlined in Fed. R. Civ. P. 26(b) and Fed. R. Civ. P. 34(a). *See also* Fed. R. Evid. 401 (defining relevance as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence" where "the fact is of consequence in determining the action"). To the extent that the specific items at issue are relevant and properly discoverable, taking into consideration the Rule 26(b)(2)(C) proportionality factors, and to the extent that they have not been produced by Defendant, Plaintiff's motion to compel should be granted. If, however, the items are not relevant or properly discoverable, the motion should be denied.

### B. Disputed Asset Item Group #1: Asset Item 2 (Bank of America Account xx8699); Asset Item 4 (Blue Cross/Blue Shield Account xx6217); Asset Item 5 (Federal Credit Union Account, Redacted Number); Asset Item 7 (SunTrust Account xx6968); Asset Item 8 (SunTrust Account xx0496)

As to Asset Items 2, 5, 7, and 8, Defendant generally argues that the four associated financial accounts have "no relevance to any claim or defense and [are] not reasonably calculated to lead to the discovery of admissible evidence." *See* Def.'s Spreadsheet 1–5. As to each specific asset item within this group, the parties make the following arguments: First, according to Defendant, Asset Item 2 relates to "a home equity loan in the name of Defendant," the repayment of which is "Defendant's sole obligation." *Id.* at 1. The loan, Defendant insists, "has no relationship to decedent's assets or liabilities." *Id.* According to Plaintiff, the documents related to the Asset Item 2 loan are relevant because the loan is explicitly referenced in the Deed of Trust cited in Count XVII of his complaint. Pl.'s Surreply 2. Second, according to Defendant, Asset Item 4 relates to "a health insurance policy on the decedent which terminated at his death," and consequently "has no relevance to the decedent's assets or liabilities." Def.'s

Spreadsheet 3. Plaintiff argues, contrarily, that documents related to the health insurance policy are likely to "lead to the discovery of where, when, by whom, and for what illnesses [decedent] was treated," and "discovery . . . of how [decedent's] illnesses and treatments throughout this period impacted his mental capacity and his susceptibility to undue influence (relevant in particular to Counts XIII, XIV, XV, and XVII)." Pl.'s Surreply 2. Asset Item 5 is irrelevant, Defendant argues, because it is "an account maintained by Defendant into which she deposited her salary and, after retirement, her monthly social security and pension checks and out of which she primarily makes mortgage payments." Def.'s Spreadsheet 3. According to Plaintiff, however, the account associated with Asset Item 5 "is in the joint names of . . . [Defendant] Doris R. Fisher, a Doris R, Fisher Recoverable Trust, and [Decedent] Robert K. Fisher." Pl.'s Surreply 2. Finally, Asset Items 7 and 8 relate to "account[s] maintained by Defendant into which she deposits rents received from the rental of a house . . . that [she] owned since the time prior to her marriage to decedent." *Id.* at 4–5. The decedent "never had any ownership interest in said [rental] property," and the accounts therefore are irrelevant to the present case. *Id.* at 5. Plaintiff does not respond to Defendant's statements regarding Asset Items 7 and 8.

With regards to Asset Items 7 and 8, Plaintiff has not responded in his surreply to Defendant's assertions that the associated documents are irrelevant, and no other filing explains their relevance.[7] Accordingly, based on the unrebutted evidence that the records relating to these

---

[7] The bare assertion in Plaintiff's surreply that all items sought "relate[] to Counts I–VIII and XII–XIX" in the complaint, without additional detail, is not enough. Pl.'s Surreply 1. Just as objections to discovery "must be specific, non-boilerplate, and supported by particularized facts,'" *Mezu*, 269 F.R.D. at 573; *Hall*, 231 F.R.D. at 470, the relevance of the material sought should be stated with particularity. Plaintiff's description of the relevance of Asset Item 4 provides a helpful example of the degree of particularity necessary. *See, e.g.*, Pl.'s Surreply 2 ("[The requested documents related to Asset Item 4] will lead to discovery, among other pertinent issues, of how [decedent's] illnesses and treatments . . . impacted his mental capacity

two Asset Items are not within the scope of discovery, Plaintiff's Motion to Compel is DENIED as to Asset Items 7 and 8.  *See* Fed. R. Civ. P. 34(a) (stating that all document production requests must be within the scope of Rule 26(b)); Fed. R. Civ. P. 26(b)(1) (limiting discovery to material that is "relevant to any party's claim or defense," or, if good cause is shown, to "any matter relevant to the subject matter involved in the action").

As to Asset Items 2, 4, and 5, a genuine dispute regarding their relevance exists.  Fed. R. Civ. P. 26(b)(2)(C)'s cost-benefit balancing factors "apply to all aspects of discovery."  *Victor Stanley, Inc.*, 250 F.R.D. at 260 n.10.  Thus, review of Plaintiff's Motion to Compel must be made with an eye toward proportionality.  As noted above, the Court has no way of gauging what the parties have spent in discovery to date because the parties have provided the Court with no specific monetary showings.  Consequently, the Court is unable to impose strict limitations on future discovery in the form of caps on the amount of time or money that the parties may expend.  *Cf. Mancia v. Mayflower Textile Servs., Co.*, 253 F.R.D. 354, 364–65 (D. Md. 2008) (explaining that estimates of "a foreseeable range of damages" and possible attorneys' fees, in addition to information about "the amount and type of discovery already provided," may be helpful "for determining what the 'amount in controversy' is in the case, and what is 'at stake' for purposes of Rule 26(b)(2)(C)'s proportionality analysis").  Acknowledging, however, that a significant amount of discovery already has been produced by Defendant in this case, and bearing in mind the need for discovery to be proportional to what is at stake in the litigation, as to Asset Items 2, 4, and 5, the parties are directed as follows: Plaintiff will select one of the three accounts at issue.  As to the selected account, Defendant will produce all related documents that are within her

---

and his susceptibility to undue influence (relevant in particular to Counts XII, XIV, XV, and XVII).").  Unfortunately, Plaintiff fails to provide such detail with regard to Asset Items 7 and 8.

possession, custody, or control.[8]  If, after reviewing the produced documents, Plaintiff is able to demonstrate that the selected account is relevant to the merits of the litigation, Plaintiff will be permitted to seek discovery as to the two other accounts.  *See* Fed. R. Civ. P. 26(b)(1) (limiting the scope of discovery to material that is "relevant to any party's claim or defense").  If, however, Plaintiff is unable to do so, discovery as to the two unselected accounts will not be permitted.  Thus, as to Asset Items 2, 4, and 5, Plaintiff's Motion to Compel is GRANTED IN PART and DENIED IN PART, without prejudice to renewing the motion as to the unselected accounts if, after discovery of the documents related to the selected account, Plaintiff is able to establish the relevance of the selected account to the litigation.

> **C. Disputed Asset Item Group #2: Asset Item 6 (NASA Federal Credit Union Account xx16-30); Asset Item 9 (Related to Life Insurance Payment xx0642); Asset Item 10 (USG Account xx3870); Asset Item 11 (Veterans' Admin. Gov't Life Insurance Account xx0642), Asset Item 12 (Bank of America Account xx6311); Asset Item 13 (SunTrust Account xx3060)**

As to Asset Items 6, 9, 11, 12, and 13, Defendant generally argues that she does not possess the related records and that it would be "unreasonably burdensome and expensive [for her to be required] to seek [the] documents from the financial institution [where they are located]."  *See* Def.'s Spreadsheet 4–7.  Specifically, as to Asset Items 6, 10, 11, and 13, Defendant explains that she anticipates "that the financial institution [related to each account] will charge a fee for production of account documents," and states that "Plaintiff has previously

---

[8] Defendant is required to produce only those documents that are within her "possession, custody, or control."  Fed. R. Civ. P. 34(a)(1).  As I explain in Part II.C below, if the relevant documents are not in Defendant's possession, custody, or control, but are instead in the custody of a third party from whom they may be obtained at no greater cost by either Plaintiff or Defendant, Defendant will not be compelled to produce them.  Rather, Plaintiff may obtain the documents in a Fed. R. Civ. P. 45 subpoena.  If, however, the cost of obtaining the documents would be greater for Plaintiff than Defendant, Defendant must obtain the documents and make them available to Plaintiff.  If Plaintiff seeks "hard copy" production of the documents, Defendant may charge Plaintiff a reasonable amount to photocopy the obtained documents.

indicated an unwillingness to pay any such fees." *Id.* at 4, 6–8. Moreover, Defendant argues that it "would be less burdensome for Plaintiff to seek the documents by subpoena." *Id.* Asset Items 9 and 12 relate to accounts for which Bank of America is the financial institution. As to those Asset Items, Defendant states that Bank of America "has previously quoted a fee for production of documents of $5.00 per page which Plaintiff has previously indicated an unwillingness to pay." *Id.* at 6–7. Defendant maintains that it "would be less burdensome for Plaintiff to seek the documents" associated with these Asset Items by subpoena. *Id.* In response, Plaintiff states that Defendant has never "initiate[d] any particularized discussion about the costs of obtaining and producing the sought documents." Pl.'s Surreply 1. Consequently, Plaintiff argues, he "never had the opportunity to consider, much less indicate, whether [he] would or would not or could pay for anything." *Id.*; *see also id.* ("Indeed, how could I indicate such a thing without [Defendant] first providing information of how many pages of documents would have to be produced by her, the different possible savings-related modes of obtaining the documents[,] and the actual or, at a minimum, the estimated cost of obtaining the documents?").

Rule 34 requires a party to produce only those documents that are within the party's "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Rule 34 "control" does not "require a party to have legal ownership or actual physical possession of any documents at issue." *Goodman*, 632 F. Supp. 2d at 515 (citation omitted). Rather, "documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action." *Id.* (citation and internal quotation marks omitted); *DataQuick Info. Sys., Inc.*, 237 F.R.D. at 563–65. With regard to the documents associated with Asset Items 6, 9, 10, 11, 12, and 13, Defendant has indicated either: (1) that she does not have actual possession or custody of any of the related documents; or (2) that she has produced those

related documents which were in her actual possession or custody, and as to all others, she lacks actual possession or custody. *See* Def.'s Spreadsheet 4–7. All related documents that have not been produced, Defendant states, are in the possession of a third party financial institution. *See id.* As the account holder, Defendant has "the right, authority, or practical ability" to obtain the requested documents from the non-party financial institutions. *See Goodman*, 632 F. Supp. 2d at 515. Consequently, the requested documents are within Defendant's control and should be produced, subject to the cost-benefit balancing factors stated in Fed. R. Civ. P. 26(b)(2)(C).[9]

In light of the cost-benefit balancing factors stated in Fed. R. Civ. P. 26(b)(2)(C), which direct the Court to "limit the frequency or extent of discovery otherwise allowed" if, *inter alia*, "the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive," the parties are directed as follows: To the extent that documents related to Asset Items 6, 9, 10, 11, 12, and 13 are in Defendant's actual possession or custody, Defendant must produce them. *See* Fed. R. Civ. P. 34(a)(1). If the related documents are not in Defendant's actual possession or custody, but are in the physical custody of a non-party financial institution, and may be obtained at no greater cost by either Plaintiff or Defendant, Defendant will not be compelled to produce them. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). Rather, Plaintiff may obtain the documents by issuing a Fed. R. Civ. P. 45 subpoena to the non-party financial institution. *See* Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a nonparty may be compelled to produce documents."); *DataQuick Info. Sys., Inc.*, 237 F.R.D. at 564 ("With regard to non-

---

[9] I note that Fed. R. Civ. P. 26(b)(2)(C) works in tandem with Fed. R. Civ. P. 26(g)(1)(B)(iii), which forbids parties submitting discovery requests from making requests that are "unreasonable [or] unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action." Thus, while Defendant's obligations in responding to discovery requests are measured against the cost-benefit balancing factors stated in Fed. R. Civ. P. 26(b)(2)(C), Plaintiff's obligations in making those requests are similarly measured against the factors stated in Fed. R. Civ. P. 26(g)(1)(B).

parties, Rule 34(c) contemplates that they may be required to produce documents through the use of a subpoena issued under Rule 45."). If, however, the cost of obtaining the documents would be greater for Plaintiff than Defendant, Defendant must obtain the documents and make them available to Plaintiff. If Plaintiff seeks "hard copy" production of the documents, Defendant may charge Plaintiff a reasonable amount for photocopies. *See Mezu*, 269 F.R.D. at 575. Thus, with regard to Asset Items 6, 9, 10, 11, 12, and 13, Plaintiff's Motion to Compel is GRANTED IN PART and DENIED IN PART, subject to the specific directions stated above.

### D. Disputed Asset Item Group #3: Asset Item 1 (Bank of America Account xx2199); Asset Item 3 (Bank of America Account xx8801)

As to Asset Item 1, defense counsel reports that, other than the document already produced to Plaintiff, Defendant does not have possession, custody, or control of any related documents. Moreover, according to defense counsel, "Defendant has been informed by Bank of America that the records relating to this account (a line of credit in Decedent's name) have been purged." Def.'s Spreadsheet 1. Plaintiff's surreply contains no further comment on this asset item. Based on Defendant's unrebutted factual representations, I find that documents related to this asset item are not within Defendant's possession, custody, or control, and therefore are not discoverable under Fed. R. Civ. P. 34(a)(1). The fact that Defendant has been informed that all records relating to the account at issue have been purged indicates that Defendant has no "practical ability" to obtain documents related to this asset item. *See Goodman*, 632 F. Supp. 2d at 515. Thus, as to Asset Item 1, Plaintiff's Motion to Compel is DENIED.

Similarly, as to Asset Item 3, defense counsel reports that Defendant does not have possession, custody, or control of any related documents. Def.'s Spreadsheet 2. Moreover, defense counsel states that "Defendant has been informed that Bank of America has no record of such account." *Id.* Plaintiff's surreply contains no further comment on this asset item. Based on

Defendant's unrebutted factual representations, I find that documents related to this asset item are not within Defendant's possession, custody, or control, and therefore are not discoverable. The fact that Defendant has been informed that no such account exists indicates that Defendant has no "practical ability" to obtain documents related to this asset item. *See Goodman*, 632 F. Supp. 2d at 515. Thus, as to Asset Item 3, Plaintiff's Motion to Compel also is DENIED.

### III.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel is GRANTED IN PART and DENIED IN PART. My ruling as to each individual asset item is outlined in detail below.

1. As to Asset Item 1, Plaintiff's Motion to Compel is DENIED.

2. As to Asset Item 2, Plaintiff's Motion to Compel is GRANTED IN PART and DENIED IN PART, without prejudice to renewing the motion as to the unselected accounts if, after discovery of the documents related to the originally selected account, Plaintiff is able to establish the relevance of the selected account to any party's claims or defenses.

3. As to Asset Item 3, Plaintiff's Motion to Compel is DENIED.

4. As to Asset Item 4, Plaintiff's Motion to Compel is GRANTED IN PART and DENIED IN PART, without prejudice to renewing the motion as to the unselected accounts if, after discovery of the documents related to the originally selected account, Plaintiff is able to establish the relevance of the selected account to any party's claims or defenses.

5. As to Asset Item 5, Plaintiff's Motion to Compel is GRANTED IN PART and DENIED IN PART, without prejudice to renewing the motion as to the unselected accounts if, after discovery of the documents related to the originally selected account, Plaintiff is able to establish the relevance of the selected account to any party's claims or defenses.

6. As to Asset Item 6, Plaintiff's Motion to Compel is GRANTED IN PART and DENIED IN PART, subject to the specific directions for production stated in Part II.C, above.

7. As to Asset Item 7, Plaintiff's Motion to Compel is DENIED.

8. As to Asset Item 8, Plaintiff's Motion to Compel is DENIED.

9. As to Asset Item 9, Plaintiff's Motion to Compel is GRANTED IN PART and DENIED IN PART, subject to the specific directions for production stated in Part II.C, above.

10. As to Asset Item 10, Plaintiff's Motion to Compel is GRANTED IN PART and DENIED IN PART, subject to the specific directions for production stated in Part II.C, above.

11. As to Asset Item 11, Plaintiff's Motion to Compel is GRANTED IN PART and DENIED IN PART, subject to the specific directions for production stated in Part II.C, above.

12. As to Asset Item 12, Plaintiff's Motion to Compel is GRANTED IN PART and DENIED IN PART, subject to the specific directions for production stated in Part II.C, above.

13. As to Asset Item 13, Plaintiff's Motion to Compel is GRANTED IN PART and DENIED IN PART, subject to the specific directions for production stated in Part II.C, above.

A separate Order shall issue.

Dated: June 5, 2012                                     /S/
                                                Paul W. Grimm
                                                United States Magistrate Judge

hlw